## McKechnie and others *vs.* Sterling.

An absolute contract for the sale of an interest in land, authorizing the purchaser to take immediate possession, the consideration to be paid on demand, vests in the purchaser the equitable interest in the land the moment it is executed and delivered.

Such an agreement is not a covenant for the immediate possession, or a condition therefor, the breach of which will avoid the contract.

The destruction of the building on the premises, by fire, after the making of such a contract, is no defense to an action for the purchase money; the purchaser being the owner thereof, and having an immediate interest therein.

APPEAL by the defendant from a judgment entered on the verdict of a jury. The action was brought to recover the sum of $200, the consideration agreed to be paid by the defendant on the purchase of an interest in real estate. The plaintiffs, in their complaint, alleged that on or about the 3d day of June, 1862, the plaintiffs being the owners of a certain building situated upon premises of Caroline and Julia W. Jackson, on the east side of Main street in the village of Canandaigua, and being the holders of a lease of said lot for the ground rent of $70 per year, payable semi-annually, which lease extended for the period of two years from the first day of March, 1860, the rent to commence from the 17th of April, 1860, and which lease had been extended for the period of one year from the first of March, 1862; and being copartners, doing business under the name, firm and style of J. & A. McKechnie, made and entered into an agreement and contract of sale with the defendant, signed by the parties, of which the following is a copy:

"This agreement, made this 3d day of June, 1862, between James McKechnie and Alexander McKechnie, of Canandaigua, Ontario county, New York, of the first part, and Stephen L. Sterling of the same place, of the second part, witnesseth, that in consideration of two hundred dollars agreed to be paid by the said Sterling, the parties of the first part do hereby agree to convey to said Sterling all their right in the property now owned and rented by the parties of the first part, and occupied by J. G. Wilson for a meat market, on the east side of Main street, nearly opposite from Chapin street in the village of Canandaigua, and hereby authorize him to take possession of said premises and building immediately. In witness," &c.

That at the date of said agreement the said building and premises were occupied by one J. G. Wilson as recited in said agreement; that the defendant made said purchase, agreeing to take the risk of obtaining the unexpired right and possession of the said premises from said Wilson; that very soon after the making of said agreement, the defendant

made arrangements with Wilson, by which the defendant was let into full possession of the said building and premises, and the plaintiffs have not since had the enjoyment, or occupation, or rents or profits of the same, or any part thereof. That after the making of said agreement, and on or about the 18th of August, 1862, they tendered to the defendant a release and quit claim of all their interest in said premises and property, and an assignment of the unexpired term of said lease so held as aforesaid, and demanded of the defendant the payment of said sum of $200, which he refused to pay, and refused to accept said release and assignment, or in any manner to comply with the said agreement on his part ; that the plaintiffs have fully performed said agreement on their part, and in consequence of such refusal on the part of the defendant, the plaintiffs have been compelled to pay and have paid the rent for said premises for the remainder of the said term, from June 3d, 1862, to March 1st, 1863, amounting to $52.50, which, by the terms and true intent of the said agreement, the defendant should have paid, and which, together with the said $200 and the interest thereon, the defendant, though often requested, has refused, and still refuses to pay to the plaintiffs.

Wherefore, the plaintiffs demanded judgment and claimed to recover of the defendant $200 and interest from the 3d of June, 1862, and $52.50, with interest from the 1st of March, 1863, besides costs.

The defendant, by his answer, admitted the making of the agreement, and that at the date of said agreement the building and premises were occupied by J. G. Wilson, but the defendant denied that he made said purchase agreeing to take the risk of obtaining the unexpired right and possession of the premises from Wilson. And he further expressly denied that, very soon after the making of said agreement, or at any time, the defendant made arrangements with Wilson by which he was let into full possession of said building or premises, as alleged in the complaint. And the defendant alleged that he never, at any time, had any possession whatever of the

said building or premises. That soon, and within a day or two after the making of the said agreement, the defendant called upon Wilson, and requested him to surrender and give up possession of the said building and premises to this defendant, which Wilson refused to do, claiming that he was under no obligation to leave, and could not be compelled to leave the same under six months.

That within about four or five days after the making of said agreement and while Wilson was still in possession of the said building and premises, and refusing to give up the same, as aforesaid, the building accidentally took fire and was burned up, by which said agreement was rendered utterly worthless to the defendant, he not being able up to that time to get any possession or use of the said building or premises, they being utterly valueless and useless to the defendant for such unexpired term without such building. The said defendant admitted that, after the making of said agreement and on or about the 18th of August, 1862, the plaintiffs tendered to him papers purporting to be substantially a release of their interest in said building and premises, and an assignment of the unexpired term of a lease by which they claimed to hold said premises, and demanded of the defendant payment of the said $200, which he refused to pay, and refused to accept said relesse or assignment on the ground that he had not been able to obtain possession of said premises or building as aforesaid. And the defendant further answering, alleged that before the burning of said building he duly notified the plaintiffs of the refusal of said Wilson to give possession of said premises, as hereinbefore stated ; but they neglected to give the defendant such possession, and took no steps to compel the said Wilson to give possession.

On the trial, the jury, under the direction of the court, found a verdict for the plaintiff for $310.69.

*Spencer Gooding,* for the appellant.

*E. G. Lapham,* for the respondent.

*By the Court,* E. DARWIN SMITH, J.   By the contract be-
tween the parties of the date of June 3d, 1862, the plaintiffs
agreed to sell, and the defendant to purchase all the right of
the plaintiffs in the premises therein described, for the con-
sideration of $200.   The plaintiffs had a leasehold interest
in the premises, subject to a rent of $70 per annum, which
term would expire on the first of March thereafter, with
the privilege of a renewal for two years longer, from the
said first of March.   The building on the premises was
erected by the plaintiffs, but it does not appear that they had
any right to remove it from the demised premises at the end
of the term.   It was, therefore, a fixture attached to the
freehold, and was part of the realty.   The agreement between
the parties was, therefore, a contract for the sale of an inter-
est in land.   The defendant was authorized to take imme-
diate possession.   The payment of the consideration was to
be made upon demand, as no time was fixed for its payment.
Strictly, perhaps, the plaintiffs could not have required pay-
ment till they tendered an assignment of the lease, and gave
the defendant possession.   The contract, however, was abso-
lute, and vested in the defendant the equitable interest in the
land the moment it was executed and delivered.   (*Moore* v.
*Burrows, and Adams* v. *Green,* 34 *Barb.* 173 *and* 183.)
This action is for the $200 consideration money specified in
the contract, and the plaintiffs showed at the trial that they
had tendered an assignment of their lease of the premises and
also a quit claim deed thereof in execution of the contract,
and demanded payment.   The defendant showed nothing in
the shape of a defense to the action, at the trial.   It is true,
he did not get possession, and could not for several days after
the execution of the contract ; but that did not avoid the
contract.   He purchased the plaintiffs' interest in the land as
it was at the time, and was content to take the contract with
a provision authorizing him to take immediate possession.
This was not a covenant for the immediate possession, or a
condition therefor, the breach of which avoided the contract.

The destruction of the building by fire, after the making of this contract, was no defense in the action. In *Sugden on Vendors, p.* 254, it is said, " that a vendee being the equitable owner of the estate from the time of the contract of sale, must pay the consideration for it, although the estate itself be destroyed between the agreement and the conveyance ; and on the other hand, he will be entitled to any benefit which may accrue to the estate in the interim," and cites 2 *Powell on Contracts,* 61 ; *Paine* v. *Meller,* (6 *Vesey Jr.* 349 ;) *Poole* v. *Sheyold,* (2 *Bro. C. C.* 118 ;) *Real* v. *Hussey,* (2 *Ball & Beatty,* 280 ;) and *Harford* v. *Pumes,* (1 *Madd.* 532.) Vide also *Fry on Specific Performance,* § 600, and *Story's Eq.* §§ 101, 102. In *Paine* v. *Miller, supra,* Lord Eldon said of the vendee in such cases : " If the party, by the contract, has become in equity the owner of the premises, they are his to all intents and purposes. They are vendbile as his, chargeable as his, capable of being encumbered as his ; they may be devised as his ; they may be assets, and they would descend to his heirs." Another consideration in support of this view, is that the vendee has an insurable interest in the premises after the contract of sale, and might have protected himself by an insurance ; and if the vendor retaining the title for his security has also a policy of insurance on the buildings on the premises, such policy would be merely a collateral security, and in case the building was destroyed by fire, the insurance company paying the loss would be entitled to an assignment of the debt, and to be subrogated to his rights. (*Angell on Fire Insurance,* § 66. *McGivney* v. *Phenix Fire Insurance Company,* 1 *Wend.* 85. *Etna Fire Insurance Company* v. *Tyler,* 16 *id.* 385.) If this contract had been a lease of this building, then this consequence would not follow. The landlord would be bound to give possession before the estate would vest, or term commence, and until that was done the lease would be a mere executory contract, as was held by this court in *Wood* v. *Hubbell,* (5 *Barb.* 604 ;) or if it had been a sale of personal

property, the plaintiff would be bound to make delivery before the title would vest, and in the meantime the property would be at his risk. (2 *Kent's Com. 2d ed.* 367. 9 *Dowl. & Ry.* 276. 7 *East,* 558, *and* 11 *id.* 210. *Thompson* v. *Gould,* 20 *Pick.* 139.) I do not see why the motion for a new trial must not be denied, and judgment be ordered upon the verdict.

[MONROE GENERAL TERM, March 4, 1867. *Welles, E. D. Smith* and *Johnson,* Justices.]